1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                    )
KEN KELLY, *et al.*,                          )
                                                    )        No. C10-5508RBL
                              Plaintiffs,      )
                                                    )
            v.                                    )
                                                    )        ORDER GRANTING
CITY OF PORT TOWNSEND,            )        DEFENDANT'S MOTION FOR
                                                    )        SUMMARY JUDGMENT
                              Defendant.      )
_____)

       This matter comes before the Court on "Plaintiffs' Motion for Partial Summary

Judgment FRCP 56" (Dkt. # 25) and "The City of Port Townsend's Motion for Summary

Judgment" (Dkt. # 31).  Plaintiffs allege that the City of Port Townsend took private property

without compensation when it redesigned the intersection of SR 20, Thomas Street, and 5th

Street.  Plaintiffs have asserted four takings claims under the federal and state constitutions, a

due process claim under the federal constitution, and common law claims of negligence and

estoppel against the City.

       Summary judgment is appropriate when, viewing the facts in the light most

favorable to the nonmoving party, there is no genuine issue of material fact that would preclude

the entry of judgment as a matter of law.  The party seeking summary dismissal of the case

"bears the initial responsibility of informing the district court of the basis for its motion"

(Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of "the

pleadings, the discovery and disclosure materials on file, and any affidavits" that show the

1  absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)).  Once the moving party has

2  satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate

3  "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324.

4  "The mere existence of a scintilla of evidence in support of the non-moving party's position is

5  not sufficient," and factual disputes whose resolution would not affect the outcome of the suit

6  are irrelevant to the consideration of a motion for summary judgment.  Arpin v. Santa Clara

7  Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477

8  U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the

9  nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its

10  favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

11

12         Having reviewed the memoranda, declarations, and exhibits submitted by the

13  parties,[1] having heard the arguments of counsel, and taking the evidence in the light most

14  favorable to plaintiffs, the Court finds as follows:

15                              **BACKGROUND**

16         Plaintiff Heritage Products, LLC, is the owner of real property having an address

17  of 2000 Sims Way (a/k/a SR 20), Port Townsend.[2]  The property covers an entire city block and

18  is bounded on the north by 6th Street, on the east by Thomas Street, on the south by 5th Street,

19  and on the west by McPherson Street.  The parties agree that Heritage Products owns a fee

20  _____

21         [1]  The Court has reviewed all of the declarations and evidence submitted by the parties.
   Although unsupported speculation and obvious hearsay have not been considered, the Court has
22  assumed that plaintiffs would be able to remedy the various technical evidentiary defects identified by
   defendants if the case were to proceed to trial.
23

24         [2]  The relationships between the various plaintiffs have not been clearly established.  For
   purposes of this motion, the Court assumes that plaintiffs Ken and Jane Kelly control a majority interest
25  in plaintiffs Heritage Products LLC, Kelantis, Inc., d/b/a Vintage Hardware, and Kelly Art Deco Light
   Museum.  Heritage Property LLC apparently leases or otherwise conveyed use rights in the subject
26  property to Kelantis, Inc., and the Museum.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -2-

1  simple estate to the centerline of each of these four streets, subject to the right of the public to

2  use the street for all purposes not inconsistent with the public easement.  At the point where the

3  centerlines of Thomas Street and 5th Street intersect, plaintiffs' fee simple estate extends into the

4  upper boundary of the SR 20 right of way.

5  In 1993, the City of Port Townsend adopted a "Gateway Plan" to guide future

6  development of SR 20 as the primary corridor to the ferry dock and the City itself.  The Plan

7  included a proposal for a traffic signal at the intersection of SR 20 and McPherson Street.

8  In 2003, plaintiffs sought a permit from the City to build a two-story commercial

9  building on their property.  The City required a number of mitigation and road improvement

10  activities, including the development of Thomas Street and 5th Street.  At the time, 5th Street

11  was nothing more than "vacant land with a barely-used dirt path" (Decl. of Ken Kelly (Dkt.

12  # 26) at 4) and Thomas Street was a dead-end (Decl. of Guy Hupy (Dkt. # 27) at 2).  Plaintiffs

13  completed the required street improvements and conveyed them to the City on March 6, 2006.

14  Decl. of David Peterson (Dkt. # 33) at 6.  Throughout the permitting and construction process,

15  plaintiffs were given the impression that they would have unobstructed 360° access to their

16  building, that 5th Street served no purpose as a public road, that plaintiffs should develop 5th

17  Street and Thomas Street as parking lots dedicated solely for the use of their building, and that

18  neither 5th Street nor Thomas Street would be opened as public throughways.[3]  Second

19  Amended Complaint (Dkt. # 10) at ¶  4.10; Decl. of Guy Hupy (Dkt. # 27) at 2-4.  As of 2005,

20  the City acknowledged only a single road improvement in the immediate vicinity of plaintiffs'

21  property, namely the proposed traffic signal at the corner of McPherson Street and SR 20, to

22  which plaintiffs were required to contribute $15,000.  Second Amended Compliant (Dkt. # 10) at

23  ¶¶ 4.19-4.20; Decl. of Guy Hupy (Dkt. # 27) at 7.  Plaintiffs designed their building and the

24

25  _____

26  [3]  Plaintiffs concede that Thomas Street would also serve as a means of access to the business
across the street, Craft Cottage.  Decl. of Guy Hupy (Dkt. # 27) at 4.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -3-

1   surrounding road improvements on the assumption that their customers and suppliers would

2   have direct access from SR 20 into the parking areas on both 5th Street and Thomas Street.

3            After plaintiffs' project was approved by the City, implementation of the Gateway

4   Plan began.  Decl. of David Peterson (Dkt. # 33) at 7 and 10.  The planning process initially

5   focused on traffic control options for the intersection of Howard Street and SR 20 (a few blocks

6   west of plaintiffs' building) where left hand turns onto SR 20 from a business park were creating

7   problems.  The City considered a number of alternatives to improve traffic flow and safety in the

8   area, held community workshops and public comment periods, and retained consultants to

9   evaluate options.  Decl. of David Peterson (Dkt. # 33) at 12-13.  When additional funding

10  opportunities arose, the City expanded the scope of the project to two intersections along SR 20.

11  In November 2008, after reviewing as many as twelve alternatives, the City selected a proposal

12  to install roundabouts at Howard Street and Thomas Street.  Decl. of David Peterson (Dkt. # 33)

13  at 15.

14           Installation of the roundabout at Thomas Street destroyed many of the

15  improvements plaintiffs had installed just a few years earlier.  Thomas Street was pushed

16  through to join with 6th Street to the north, thereby destroying infrastructure plaintiffs had

17  placed at what used to be the "end" of the road.  The City installed curbing and a retaining wall

18  across the eastern end of 5th Street where it intersected Thomas Street and SR 20, thereby

19  preventing vehicles in the roundabout from directly accessing 5th Street and its parking areas.

20  Plaintiffs' on-street parking arrangements were also altered.  The number of parking spaces

21  plaintiffs' customers could use on Thomas Street was reduced from five to two, while the

22  available spaces on 5th Street increased from ten to fourteen.  In effect, the installation of the

23  roundabout changed 5th Street into a one-block, dead-end road that serves primarily as a parking

24  lot for plaintiffs' businesses.  Decl. of Ken Kelly (Dkt. # 26) at 6; Decl. of Guy Hupy (Dkt. # 27)

25  at 4.  Despite the overall increase in on-street parking, the 2009-2010 traffic flow revision has

26  made it more difficult for larger vehicles, including the tour buses on which plaintiffs' business

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -4-

apparently depends, to access plaintiffs' building.  Ingress to 5th Street now requires at least two turns from SR 20, rather than the direct access that existed prior to installation of the roundabout. Plaintiffs assert that, because the remaining stub of 5th Street does not have a turnaround at the east end, it does not provide an attractive parking option to the drivers of over-sized vehicles. Supplemental Decl. of Ken Kelly (Dkt. # 44) at 5.  Because plaintiffs' building, including the location of the front entrance and showroom, was designed based on the assumption that customers would have direct access to and parking on 5th Street, the conversion of 5th Street into a dead end road that is unable to accommodate larger vehicles has made the existing design unworkable and caused a loss of business.  Supplemental Decl. of Ken Kelly (Dkt. # 44) at 7-8.

Plaintiffs seek compensation for injuries caused by the construction of the roundabout at the intersection of SR 20 and Thomas Street.  Each theory of recovery is discussed below.

## DISCUSSION

**A.  Takings Claims**

Plaintiffs have alleged four takings in the Second Amended Complaint, entitled "Physical Taking of Fee Simple Property," "Taking Access of an Abutting Property," "Physical Taking of a Private Easement," and "Taking by Disproportionate Exactions Upon Removal of Improvements."  Although it is sometimes difficult to parse the arguments made in support of and against each takings claim, the Court has considered each claim in the order alleged in the complaint.

### 1.  Physical Invasion of Property Held in Fee Simple

Plaintiffs argue that the City's construction of the roundabout at the intersection of Thomas Street and SR 20, including the curbing and retaining wall installed at the east end of 5th Street, works a physical invasion of property owned by plaintiffs in fee simple.  Plaintiffs acknowledge that the roundabout and related improvements were constructed within the public

1  right of way.  Plaintiffs' Motion (Dkt. # 25) at 11.  The issue, then, is whether the construction

2  invaded a property right owned by plaintiffs.

3         State law generally determines whether a property right exists.  Pande Cameron &

4  Co. of Seattle, Inc. v. Cent. Puget Sound Reg'l Transit Auth., 610 F. Supp.2d 1288, 1300 (W.D.

5  Wash. 2009), aff'd, 376 Fed. App'x. 672 (9th Cir. 2010).  Under Washington law, a property

6  owner holds a fee simple estate to the centerline of any public street abutting his lot.  Mall, Inc.

7  v. City of Seattle, 108 Wn.2d 369, 376 (1987); RCW 35.79.040 ("If any street or alley in any

8  city or town is vacated by the city or town council, the property within the limits so vacated shall

9  belong to the abutting property owners, one-half to each."); 11A Eugene McQuillan, The Law of

10 Municipal Corporations § 33:3 (3rd ed.).  If the street is ever abandoned by the municipality, the

11 public's easement or right of use may end, in which case the property will revert to the abutter.

12 Puget Sound Alumni of Kappa Sigma, Inc. v. City of Seattle, 70 Wn.2d 222, 226 (1967).

13 Ownership of the fee simple estate also means that if there are minerals or other valuable

14 resources under the street, the abutter may have a right to excavate them.  10A Eugene

15 McQuillan, The Law of Municipal Corporations § 30:37 (3rd ed.).[4]  The public, however, has an

16 easement over the surface for any use consistent with its character as a public right of way.  The

17 abutter's ownership interest is limited by the public's easement:  the abutter may extract

18 minerals or otherwise make use of the fee only if such use is "not inconsistent with the easement

19 in the public for street purposes."  Nystrand v. O'Malley, 60 Wn.2d 792, 795 (1962).  See also

20 10A Eugene McQuillan, The Law of Municipal Corporations § 30:37 (3rd ed.).

21        The City's reconfiguration of an intersection within its existing right of way was

22 consistent with and appropriate to the purposes of a public street.  10A Eugene McQuillan, The

23 Law of Municipal Corporations § 30:40 and § 30:62 (3rd ed.).  The placement of curbing and

24

25
26     [4] The abutter also has the right to use the streets to the same extent as the rest of the public.  10A
   Eugene McQuillan, The Law of Municipal Corporations § 30:53 (3rd ed.).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -6-

1  traffic control structures on property that was already subject to the public's easement did not

2  expand the City's right of way or interest in the property.  Plaintiffs' interest in the fee was

3  already subject to the public's right of use:  no additional interest was invaded or property taken.

4  10A Eugene McQuillan, The Law of Municipal Corporations § 30:36 (3rd ed.) ("[I]t is

5  immaterial whether the abutter owns the fee in the street insofar as the rule is concerned that the

6  abutter takes subject to the paramount right of the public to use the street for all the appropriate

7  purposes of a street.").  Plaintiffs' first cause of action fails because the City cannot be forced to

8  pay for a property interest it already possessed when the roundabout was constructed in 2009-

9  2010.

10          **2.  Deprivation of Access to an Abutting Property**

11          By virtue of the centerline rule, plaintiffs' fee simple estate extends into the SR 20

12  right of way:  the centerlines of 5th Street and Thomas Street intersect just within the northern

13  boundary of the main road.[5]  Plaintiffs assert that they have a right of access to all streets

14  "abutting" their property and that their right of direct ingress from and egress to SR 20 has been

15  impaired by construction of the curbing and retaining wall at the eastern end of 5th Street.

16  While plaintiffs are willing to concede that the City has the power to take property for highway

17  purposes or cut off an abutting owner's access if necessary for the public good, they argue that

18  this power is subject to the owner's constitutional right to compensation for the loss of access.

19          Although plaintiffs have a property interest in a small triangular portion of SR

20  20 by operation of state law, they do not "abut" SR 20 for purposes of acquiring a right of

21  ingress and egress.  The right of access is a property right incident to ownership of property

22

23          [5]  The Court makes no findings regarding the extent of plaintiffs' property interest in the land
24  underlying SR 20 beyond the point where the centerlines intersect.  Whether an abutting centerline - as
    opposed to an abutting lot - further extends the underlying estate to the centerline of a connecting
25  roadway has not been addressed by the parties.  Suffice it to say that property in which plaintiffs have a
    fee simple interest underlies a small, triangular portion of SR 20 where the centerlines of 5th Street and
26  Thomas Street intersect.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -7-

1  adjoining a street.  It is "usually independent of the fee title to the bed of the street" and

2  guarantees to the owner "free passage between his or her property and the street so that the

3  owner may go upon it to exercise his or her public right of travel and then return."  10A Eugene

4  McQuillan, The Law of Municipal Corporations § 30:62 (3rd ed.).  "[W]here there is no physical

5  connection between the lot line and the street line, the owner of the lot is not an abutter . . . ."

6  10A Eugene McQuillan, The Law of Municipal Corporations § 30:54 (3rd ed.).  Plaintiffs'

7  technical ownership interest in a small portion of SR 20 has never guaranteed free passage to and

8  from that throughway.  Plaintiffs' property line does not touch SR 20:  their interest in the main

9  road exists only because Washington law gives them a fee estate in the lands underlying 5th

10  Street and Thomas Street.  Plaintiffs could not, consistent with the public's right of way on 5th

11  Street and Thomas Street, construct a driveway or other access path that would connect their lot

12  directly to SR 20 because such construction would interfere with the flow of traffic on the

13  smaller streets.  Despite plaintiffs' claim that they had "direct" access to SR 20 prior to

14  construction of the roundabout, access to the main road has always been indirect.  Prior to 2009,

15  persons on plaintiffs' property had to travel on 5th Street and/or Thomas Street to reach SR 20.

16  In these circumstances, the right of access that generally accrues to the owner of adjoining

17  property is simply not implicated.  See 10A Eugene McQuillan, The Law of Municipal

18  Corporations § 30:62 (3rd ed.) ("[W]here a limited access road is constructed where no such

19  road previously existed, an abutting owner cannot recover damages by reason of lack of access

20  to such new road because no such right existed before.").  Although an owner generally has a

21  right to connect to the street upon which his property is situated, that right does not extend to

22  another connecting street merely by virtue of the centerline rule.  Such an extension would

23  exceed the reasonable expectations of property owners and would create rights of access that

24  would be difficult, if not impossible, to enforce.

25          Even if plaintiffs had a separate property interest in access to SR 20, the City has

26  not deprived plaintiffs of that interest.  The City has the power to control and regulate its public

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -8-

streets, including the power to erect permanent barricades that obstruct egress and ingress if
necessary to safeguard the traveling public. 10A Eugene McQuillan, <u>The Law of Municipal
Corporations</u> § 30:62 (3rd ed.). The City will be required to pay compensation as a result of
such obstructions only if its regulation of the streets deprives an abutting property owner of
reasonable access under all of the circumstances. The right of access is not the right to the most
direct, quickest, or established route to the public right of way. Rather, the property owner is
entitled to modes of egress and ingress which makes "the premises accessible to patrons, clients,
customers and visitors generally with a degree of convenience and ease which in the
circumstances are reasonable." 10A Eugene McQuillan, <u>The Law of Municipal Corporations</u>
§ 30:62 (3rd ed.) (internal footnote omitted).

The Court finds that, as a matter of law, the City has not abridged this right. The
abutting owner's right of access, as with all other rights pertaining to the public right of way, is
subject to the public's easement. He may make "any reasonable use of the street which will not
interfere with the enjoyment of the use of it by the public and as the public interest increases the
owners's rights may grow less." 10A Eugene McQuillan, <u>The Law of Municipal Corporations</u>
§ 30:53 (3rd ed.). As the City of Port Townsend has grown and expanded, the need to regulate
access to and travel upon SR 20 has increased. Assuming, for purposes of this analysis, that
plaintiffs had direct access to SR 20 from the southeast corner of their property before the
roundabout was constructed, the City could reasonably conclude that continuing such access was
inconsistent with traffic flow and safety considerations in the circle. The installation of a
physical barrier between SR 20 and 5th Street did not isolate plaintiffs' building: plaintiffs
retain direct access to four adjoining streets, two of which intersect with SR 20 within meters of
plaintiffs' lot line. The parking spaces on 5th Street can be accessed via a right hand turn onto
McPherson Street and an immediate right hand turn onto 5th Street. In the alternative, customers
can park on Thomas Street or McPherson Street (which remain directly accessible from SR 20)
or in the parking lot at the back of plaintiffs' building. Plaintiffs have not identified, and the

1   Court has not found, any case in which such varied options for ingress and egress were deemed a

2   taking simply because the most convenient path of travel was obstructed by municipal action.

3   The issue is whether plaintiffs' property is "accessible to patrons, clients, customers and visitors

4   generally with a degree of convenience and ease which in the circumstances are reasonable."

5   10A Eugene McQuillan, The Law of Municipal Corporations § 30:62 (3rd ed.) (internal footnote

6   omitted).  Given the City's need to regulate and improve the flow of traffic along the SR 20

7   corridor, plaintiffs' and their customers have not been deprived of convenient and easy access to

8   plaintiff's property despite the fact that the best option for egress and ingress has been cut off.

9   The extent of plaintiffs access to their property is reasonable as a matter of law.  No

10   constitutional taking of the right of access has occurred.

11   **3.  Physical Taking of a Private Easement**

12   Plaintiffs' third takings claim is based on the premise that they have some sort of

13   private easement in 5th Street and Thomas Street.  To the extent plaintiffs are simply restating

14   their invasion and access claims, this third claim fails for the reasons set forth above.  Plaintiffs

15   may, however, be seeking to enforce a different right of access, a right of ingress and egress

16   along the public right of way from 5th Street directly to SR 20.  Plaintiffs argue that they have

17   acquired a protectable property interest in an unimpaired connection between the roads through a

18   combination of the original dedication of the streets in 1889 and the process of development

19   plaintiffs went through in the mid-2000s.  In particular, plaintiffs argue that, because 5th Street

20   was dedicated for use as a public thoroughfare, the City had no power to obstruct the free flow

21   of traffic from 5th Street to SR 20, and plaintiffs reasonably developed their property on the

22   assumption that the street would remain open to through-traffic as intended by the original

23   grantors.  Plaintiffs maintain that these events gave them a private easement along 5th Street

24   directly onto SR 20 which was taken by the City when it cut the connection between the two

25   roads.

26   Plaintiffs are incorrect for a number of reasons.  First, the original dedication did

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    -10-

1    not preclude the City from capping 5th Street where it intersects with SR 20.  Mr. and Mrs.

2    Eisenbeis, the original grantors, dedicated "to the public for their use forever, the avenues,

3    streets, and alleys as shown on this supplementary Plat."  Decl. of Ken Kelly (Dkt. # 26), Ex. C.

4    Although one could argue that the dedication to the public is conditioned on the use of the

5    avenues, streets, and alleys as public rights of way, no other conditions are suggested by the

6    granting document.  See 11A Eugene McQuillan, The Law of Municipal Corporations § 33:11

7    (3rd ed.) ("To create a condition in a grant of land to a municipal corporation, appropriate words

8    must be used, and a right of reentry reserved.").  The grantors did not limit the public's power to

9    control and regulate the roadways, express a preference for vehicular traffic over pedestrian

10   zones, or preclude alteration of the flow of traffic.  Unless expressly stated in the grant,

11   municipalities generally "possess extensive and drastic police powers with respect to the care,

12   supervision, and control of streets."  10A Eugene McQuillan, The Law of Municipal

13   Corporations § 30:40 (3rd ed.).  Thus, the City could appropriate portions of the right of way for

14   any purpose consistent with public travel, including the installation of modern traffic control

15   devices, the installation of curbing that limits ingress or egress, and even the termination of

16   streets if the public interest so demands.  10A Eugene McQuillan, The Law of Municipal

17   Corporations § 30:41 (3rd ed.).[6]  The Court finds that the use to which the City has put 5th Street

18   – a dead end road with vehicular access, pedestrian throughways, and public parking – is

19   permissible under the language of the dedication.

---

21       [6] At oral argument, plaintiffs suggested that the City's installation of curbing and a retaining
22   wall within the public right of way was the functional equivalent of the construction of a building in the
     intersection of 5th Street and SR 20.  The Court disagrees.  Although converting a street, alley, or
23   avenue into a building site would likely be inconsistent with the original grant, the obstacles of which
     plaintiffs complain are clearly part of a traffic control device intended to benefit the flow and safety of
24   public travel in the area.  The fact that other, less obtrusive, control options are available to the City
     Council is irrelevant:  "the exercise of control is considered a purely legislative function, with which the
25   courts will not interfere except in case of clear abuse of power or fraud, for a city has a broad discretion
     in this area, so long as it keeps within the bounds of reason."  10A Eugene McQuillan, The Law of
26   Municipal Corporations § 30:40 (3rd ed.).

1    Second, to the extent plaintiffs assumed that 5th Street would forever connect

2    directly to SR 20, the assumption was unreasonable.  As noted above, the original grant did not

3    require such a connection or otherwise impose conditions on the public's exclusive control over

4    the streets.  State law gives the City the power to "improve streets, alleys, avenues, sidewalks, . .

5    . and other public grounds, and to regulate and control the use thereof . . . ."  RCW 35.22.280(7).

6    See also RCW 35A.11.020 (cities like Port Townsend have the same powers as first-class cities).

7    The closing of 5th Street to through traffic falls within this grant of authority.  Mackie v. City of

8    Seattle, 19 Wn. App. 464, 470-71 (1978).  Plaintiffs knew that 5th Street was a public right of

9    way, despite its undeveloped condition.  In order to obtain rights in the street in excess of those

10   arising from their fee simple interest to the centerline, plaintiffs would have to seek vacation of

11   the abutting street and compensate the City based on the appraised value of the property.  RCW

12   35.79.010 and 35.79.030.  Having declined to do so (Decl. of Guy Hupy (Dkt. # 27) at 3),

13   plaintiffs could not reasonably believe that they had a private easement in 5th Street or that the

14   City was in any way bound to maintain the existing traffic pattern in or around the intersection

15   of the right of way and SR 20.

16   Finally, plaintiffs offer no cognizable theory pursuant to which they would have

17   obtained a private easement in the street that runs by their property.  The public has exclusive

18   control over its streets (Mackie, 19 Wn. App. at 470-71) and does not have to obtain the

19   permission of adjoining owners before regulating the use of the right of way.  Although plaintiffs

20   have the right to utilize the public streets to the same extent as other members of the public, they

21   do not have a competing ownership interest or easement in the street itself.  The only separate

22   property interests that plaintiffs have identified – the fee simple interest to the centerline of the

23   road and the right of reasonable access – do not create a private easement along the right of way

24   for plaintiffs' individual benefit.  Absent a protectable property interest, there can be no taking.

25

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -12-

1

### 4.  Imposition of Disproportionate Exactions

2           Plaintiffs' fourth takings claim is based on the destruction of some of the

3    improvements plaintiffs were required to install as part of the development of their property.  In

4    particular, plaintiffs allege that they "are entitled to use the improvements they created on 5th

5    and Thomas" and that the City's construction of curbing and a retaining wall at the end of 5th

6    Street deprived plaintiffs "of the benefit of these [improvements] and denied the Kellys access

7    along a portion of those improvements."  Second Amended Complaint (Dkt. # 10) at ¶ 5.4.  In

8    their opposition to the City's motion for summary judgment, plaintiffs also argue that when the

9    City destroyed the road improvements plaintiffs had installed at the intersection of Thomas

10   Street and 5th Street, the expenditures that had been required by the City as a condition of the

11   development project became disproportionate and unreasonable.  Response (Dkt. # 40) at 8-9.

12          Plaintiffs do not challenge the City's authority to demand that a developer make

13   infrastructure improvements in order to mitigate their project's impact on the public.  Nor do

14   they allege that, as of the time their building was permitted, the mitigation and road

15   improvement activities demanded by the City were disproportionate, unreasonable, or otherwise

16   invalid.[7]  Following completion of the mitigation activities, plaintiffs dedicated the

17   improvements to the City, which could then control and alter them in the same way and to the

18   same extent as it could control and alter the other property in the right of way.  To the extent

19   plaintiffs are arguing that they retained a private ownership interest in the road and infrastructure

20   improvements after they were dedicated to the City, they provide no support for such an

21   assertion.  As discussed above, plaintiffs do not have a private easement in 5th Street that gives

22   them any greater rights to use the street (or to resist municipal improvements) than those enjoyed

23   by the public in general.  Nor could plaintiffs reasonably expect to profit individually from

24

25           [7]  Had they wanted to raise such a claim, plaintiffs would have had to challenge the imposition of
the mitigation requirements under Washington's Land Use Petition Act, RCW 36.70C et seq.  Habitat
26   Watch v. Skagit County, 155 Wn.2d 397, 406-07 (2005).

1 property that they had knowingly and voluntarily dedicated to the public.[8]  Thus, plaintiffs have

2 failed to show that they owned a protectable property interest in the public's right of way or the

3 incorporated improvements arising from a private easement or legitimate business expectancy.

4 This fourth takings claims therefore fails as a matter of law.

5 **B.  Due Process Claim**

6           Plaintiffs assert that the City has destroyed or interfered with their private property

7 rights without due process of law.  In the Second Amended Complaint, plaintiffs assert that the

8 decision to place a roundabout at the intersection of Thomas Street and SR 20 was without

9 substantial justification and therefore arbitrary and capricious. Dkt. # 10 at ¶ 5.5.  While there

10 was clearly a difference of opinion regarding the relative merits of traffic lights, roundabouts,

11 and control devices at various intersections along SR 20, the dispute was resolved by a vote of

12 the City Council.  One member of the City Council has stated that the vote was improper

13 because "the decision to place the roundabout was made before the necessary studies justifying

14 its location were performed."  Decl. of Geoff Masci (Dkt. # 56) at 3.  There is, however, no

15 indication that additional studies were required by law, that the vote was procedurally deficient,

16 or that the decision was outside the City Council's authority.  Plaintiffs have therefore failed to

17 raise an inference that the City abused its power or acted without reasonable justification or for

18 an illegitimate end in approving the Thomas Street roundabout.  Shanks v. Dressel, 540 F.3d

19 1082, 1089 (9th Cir. 2008).

20           In their opposition to the City's motion for summary judgment, plaintiffs argue

21 that the City failed to give them the process to which they were entitled – namely, eminent

22

23           [8]  Plaintiffs claim that the 2008 decision to install a roundabout at the intersection of Thomas

24 Street and SR 20 (and/or the decision to block off the eastern end of 5th Street) altered the
reasonableness of the terms and conditions that were imposed on plaintiffs' development in 2005.

25 Plaintiffs offer no authority for the proposition that courts should evaluate the validity of municipal land
use decisions based not on the facts and information known at the time, but rather on facts and events

26 that arise long after the decision has been made.  The Court will not engage in such an exercise.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -14-

1   domain proceedings – when it deprived plaintiffs of their fee ownership, abutter easement rights,

2   and right of direct access to SR 20.  Response (Dkt. # 40) at 9-10.  For the reasons discussed

3   above, the Court finds that the City has not adversely impacted plaintiffs' fee simple interest in

4   the streets adjoining their property, that plaintiffs had no right to access SR 20 directly from their

5   property, that the City has not unreasonably impacted plaintiffs right of access, if any, to SR 20,

6   and that plaintiffs had no private easement in the public's right of way.  Because plaintiffs have

7   failed to show a protectable property interest under state law and/or a deprivation thereof, their

8   procedural due process claim fails as a matter of law.

9   **C. NEGLIGENT DESIGN**

10          Plaintiffs allege that the design of the roundabout and related street improvements

11   is faulty in that it prevents larger vehicles from accessing plaintiffs business via the 5th Street

12   parking area.  Second Amended Complaint (Dkt. # 10) at ¶ 5.6.  The elements of a negligence

13   claim are (1) the existence of a duty owed to plaintiff and (2) a breach of that duty which

14   (3) proximately causes (4) injury to plaintiff.  Pedroza v. Bryant, 101 Wn.2d 226, 228 (1984).

15   Plaintiffs have not identified any theory or facts that could support a finding that the City

16   breached a duty related to the design of the road improvements.  There is no indication that the

17   roundabout or the alterations to 5th Street are defective in any way or that they do not comply

18   with governing laws and regulations.  As asserted in their complaint, plaintiffs' negligence claim

19   fails as a matter of law.

20          In opposition to the City's motion for summary judgment, plaintiffs argue that the

21   issuance of a building permit for a development that contemplated easy access from SR 20 and

22   large vehicle parking on 5th Street imposed a duty upon the City "to act with reasonable care to

23   avoid foreseeable risk of harm to the Kellys who built in reliance on the permit."  Response

24

25

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT              -15-

1  (Dkt. # 40) at 10.[9]  In support of the alleged duty, plaintiffs cite J&B Dev. Co., Inc. v. King

2  County, 29 Wn. App. 942, 951-52 (1981), which rejected the "public duty doctrine" (i.e., the

3  rule that a duty owed to the public in general cannot be enforced by individual members of the

4  public) and imposed a duty on the municipality to exercise reasonable care to avoid foreseeable

5  risks of harm to the recipients of building permits.  On appeal, the Washington Supreme Court

6  reaffirmed the public duty doctrine, but held that because the recipient of a building permit has a

7  "special relationship" with the issuing agency, the municipality owes a duty to use reasonable

8  care toward the individual recipient when it evaluates a proposed project and issues a building

9  permit.  J&B Dev. Co., Inc. v. King County, 100 Wn.2d 299 (1983).

10        Even if J&B Development were still good law (it is not[10]), the case would not

11  support the sweeping duty posited by plaintiffs.  Plaintiffs are not arguing that the City

12  negligently issued their building permit or that the City is now attempting to invalidate or

13  otherwise alter the permit on which they relied.  Rather, plaintiffs are attempting to use a

14  building permit that was issued in 2004 to forestall any future municipal activity in the vicinity

15  of their property that could adversely impact their use and enjoyment of the permitted structure.

16  A building permit is not a guarantee that the neighborhood will remain unchanged or that the

17  status quo will prevail indefinitely.  Nor does permission to proceed with construction

18  _____

19   [9]  Plaintiffs also argue that the roundabout was negligently constructed, causing "significant

20  physical damage to the unique fountain fronting the main entrance" of their building.  Response (Dkt. # 40) at 11.  Under even the most generous reading of plaintiffs' complaint, the City would not have

21  known that plaintiffs were asserting a negligent construction claim in this litigation, and such a claim cannot be raised for the first time at summary judgment.  Even if the Court were to consider the new

22  claim, it is unsupported.  Plaintiffs offer no legal analysis regarding a negligent construction claim against a municipality and only a bare statement that the fountain, which did not leak before the

23  construction of the roundabout, is now leaking.  Supplemental Decl. of Ken Kelly (Dkt. # 44) at 8.

24   [10]  See Taylor v. Stevens County, 111 Wn.2d 159, 167 (1988) (overruling J&B Dev. and noting

25  that a building permit simply authorizes construction to proceed and is not "an official action by which a local government implicitly approves a builder's plans to erect a structure of the type and at the place

26  approved.").

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -16-

1    necessarily indicate approval of a proposed use for or the specific design elements of the

2    building.  Most municipalities utilize inspection and permit schemes not to benefit individual

3    property owners, but to ensure compliance with zoning and other land use requirements to

4    protect the health and safety of the general public.  Taylor v. Stevens County, 111 Wn.2d 159,

5    164-65 (1988); RCW 19.27.020.  There is no indication in the record that the City of Port

6    Townsend issues building permits as a sort of promise that the builder's vision for the project

7    will come true or will be allowed to continue unchanged and unregulated into the future.  Even if

8    the permit at issue here specifically required a particular design element or infrastructure

9    upgrade, the installation of the roundabout did not directly impact the building or any property

10   retained by plaintiffs after the street improvements were dedicated to the City in 2006.  Plaintiffs

11   have not shown that the City was under any sort of duty to safeguard plaintiffs' investment in

12   their property or to otherwise refrain from making traffic and safety improvements in the vicinity

13   of the property simply because they were not anticipated in the original permitting process.

14   **D. PROMISSORY ESTOPPEL**

15          The elements of promissory estoppel are "(1) a promise which (2) the promissor

16   should reasonably expect to cause the promisee to change his position and (3) which does cause

17   the promisee to change his position (4) justifiably relying upon the promise, in such a manner

18   that (5) injustice can be avoided only by enforcement of the promise."  Corbit v. J.I. Case Co.,

19   70 Wn.2d 522, 539 (1967).  Washington courts have applied promissory estoppel to

20   municipalities.  Harberd v. City of Kettle Falls, 120 Wn. App. 498, 519-20 (2004).  For purposes

21   of this analysis, the Court will assume that City employees actively encouraged plaintiffs to

22   purchase and develop the property on which their building is located by promising that plaintiffs

23   could utilize 5th Street for parking and that the building would be accessible from all sides.

24   Supplemental Decl. of Ken Kelly (Dkt. # 44) at 2-3.

25          Nevertheless, plaintiffs' promissory estoppel claim fails as a matter of law.  Taken

26   in the context in which they were made, the alleged promises are not the equivalent of a promise

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    -17-

1   that the intersection between 5th Street and SR 20 would remain open to traffic or that the road
2   improvements plaintiffs installed as part of the development would be left undisturbed in
3   perpetuity.  Dividing 5th Street from SR 20 did not impair the visibility of plaintiffs' building, its
4   accessibility from all sides, its fire prevention system, or the existence of on-street parking.
5   Plaintiffs may have inferred that the City would not make any changes to the traffic patterns near
6   their building (at least not on the Thomas Street side), but they have not produced any evidence
7   that they were promised such immunity from further development.

8           To the extent plaintiffs are asserting that the City promised that 5th Street would
9   be closed to the public and/or dedicated to plaintiffs' sole use, reliance on such a promise would
10  be unreasonable given the facts of which plaintiffs were aware.  As discussed above, plaintiffs
11  knew that 5th Street was a public right of way subject to the City's unilateral control.
12  Nevertheless, plaintiffs chose not to petition to vacate the abutting street once they learned that
13  they would have to compensate the City based on the appraised value of the property.  Decl. of
14  Guy Hupy (Dkt. # 27) at 3.  Having declined to seek vacation of 5th Street, plaintiffs could not
15  reasonably believe that they had a private easement in the right of way, that the public would or
16  could be excluded from the right of way, or that the City was bound to maintain the existing
17  traffic pattern in or around the intersection of Thomas Street and SR 20.

18          Having spent a considerable amount of time reviewing the facts of this case and
19  considering plaintiffs' claims, the Court is left with the general impression that plaintiffs got the
20  short end of the stick in this development process.  There is not, however, a judicial remedy for
21  every wrong, especially when the alleged wrongdoer is the government.  As counsel pointed out
22  at oral argument, plaintiffs' remedy, if any, lies in the political arena.

23

24

25

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -18-

1

**CONCLUSION**

2          For all of the foregoing reasons, plaintiffs' motion for partial summary judgment

3  (Dkt. # 25) is DENIED and the City's motion for summary judgment (Dkt. # 31) is GRANTED.

4  Plaintiffs' claims against the City of Port Townsend are hereby DISMISSED.  The Clerk of

5  Court is directed to enter judgment in favor of defendant and against plaintiffs.

6

7          Dated this 16th day of May, 2011.

8

9

10                                        Robert S. Lasnik
                                          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    -19-